FLOYD THOMAS ASHLEY, Plaintiff-Appellant, *v.* OSMAN & ASSOCIATES, INC., *et al.*, Defendants-Appellees.

First District (5th Division)  No. 82—2059

Opinion filed April 29, 1983.

Allan G. Levine, of Chicago, for appellant.

Michael J. Gill and Charles J. Risch, both of Isham, Lincoln & Beale, of Chicago, for appellee Robert Jaydos & Associates.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis and Lew J. Campione, of counsel), for other appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Plaintiff, an employee of Hans Rosenow Roofing Company, Inc., filed a two-count complaint seeking damages for injuries sustained when he fell at an office building construction site during the course of his employment. Count I of the complaint alleged that defendants, Osman & Associates, Inc. (general contractor), Robert Jaydos & Associates (architects), and Charter Properties, Inc. (owner of the office building complex), were guilty of violations of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) (the Act) and count II alleged common law negligence.[1] Pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45), defendants moved for dismissal of count I of the complaint. The motion was granted. Thereafter, pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), plaintiff was granted his motion for an express finding to allow immediate appeal of the dismissal of count I. Plaintiff's timely appeal followed. The issues before this court are: (1) whether plaintiff was using a scaffold, support or device within the purview of the Act at the time he fell and was injured, and (2) whether carrying materials and/or equipment at a construction site is an activity covered by

---

[1] Although defendants have indicated some concern regarding incorporating count II's allegations into count I when no such references were made in the complaint itself, we note that this court is now at the pleading stage and, consequently, has the entire record for review, including motions for dismissal and supporting memoranda of law.

the Act. For the reasons that follow, we reverse the trial court's decision.

In August 1980, plaintiff and defendants were engaged in the construction of an office building complex in Wheeling, Illinois. The record indicates that, at that time, the ground at the construction site was ungraded and covered in deep mud due to an abnormal amount of rainfall. As a result, it was impossible for vehicles of any kind to make deliveries directly to the buildings under construction. Instead, materials and equipment had to be deposited as close to the buildings as conditions would allow, at which point workmen would then carry the materials and equipment to wherever they were needed. To prevent workmen from sinking into the mud, planks and concrete forms were set up as walkways across the site.

On August 12, 1980, while plaintiff, a roofer, was walking on one of the walkways, carrying a 200-pound propane tank to the building where he was working, the planking beneath him slipped out from under his feet and he fell to the ground with the propane tank on top of him. As a result, plaintiff suffered severe muscle and nerve damage.

OPINION

The principal issue of this appeal involves the scope of section 1 of the Act, which provides:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1979, ch. 48, par. 60.

The purpose of the Act is to protect persons engaged in extrahazardous occupations on or near a construction site. In order to effectuate this benevolent purpose, the Act is to be liberally construed. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573.) However, judicial construction should not be so broad as to have the Act cover all construction-related injuries. (*St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 522, 439 N.E.2d 12.) Rather, particular attention must be directed to the spe-

cial circumstances surrounding each injury-causing accident.

The elements of a cause of action under section 1 of the Act include the following: (1) the device involved must be one listed in the Act; (2) the device involved must be used to complete the construction of a building or other structure within the Act; (3) the device must be unsafe, or not safely placed or operated (or there must be a failure to provide such a device); (4) those in charge of the work must have wilfully violated the Act; and (5) plaintiff's injury must be proximately caused by defendant's violation. (Ring, *The Scaffold Act: Its Past, Present and Future*, 64 Ill. B.J. 666, 670 (1976).) The pending appeal involves only the first element, whether the planks and concrete forms erected as walkways are within the scope of the Act.

Defendants argue that planks and boards laid flat on the ground do not constitute a "scaffold" within the meaning of the Act. In support of their position, defendants rely on *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 451, 236 N.E.2d 724 (section one covers construction work required to be done beyond a person's ordinary reach); *Juliano v. Oravec* (1972), 3 Ill. App. 3d 835, 840, 279 N.E.2d 376 (subflooring is the same as a scaffold in that both are used for above-ground support); and *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392, 405-06, 235 N.E.2d 323 ("if the apparatus was intended to be and was put to temporary use to provide footing or support above the ground or floor *** it was a scaffold ***.") In adopting this position, defendants focused exclusively on the term "scaffold" to the exclusion of hoists, cranes, stays, ladders, supports or other mechanical contrivances, which are also expressly listed in the Act. It is precisely this narrow focus which we find at error in defendant's argument.

As this court stated in *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1090-91, 428 N.E.2d 1051, "[I]f we construe the other terms [of the Act] as exact synonyms of 'scaffold,' *** we judicially erase terms that the legislature thought important enough to include. Such a result is illogical and unnecessary." In reaffirming our position in *Urman* regarding use of the terms, we turn our focus away from the term "scaffold" and direct it to the term "support."[2]

Because the Act itself does not define the terms listed in section 1, it has become a necessary function of the courts to do so. As a result, a three-prong judicial guideline has evolved over the years which, when applied to a given fact situation, facilitates the delinea-

---

[2]Two dictionary definitions of "support" are: (1) "to bear the weight of, especially from below;" and (2) "to hold in position to prevent from falling, sinking or slipping." (American Heritage Dictionary 1293.)

tion of the scope of section 1. First, courts inquire into the intended use of the device in question at the time of the injury. *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213 (worker fell off a roof while installing insulation and skylights. Held: roof was within the meaning of section 1 because at the time of the injury, the roof was being used as the only support for the worker); *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011 (while inspecting a building under construction, a city inspector tripped over debris strewn on a concrete floor. Held: floor was not within the meaning of section 1 because it was being utilized solely as a completed floor); *Acquaviva v. Sears Roebuck & Co.* (1979), 68 Ill. App. 3d 588, 386 N.E.2d 381 (in an effort to start the mortar mixer, a worker fell while standing with one foot on top of an empty wheelbarrow and the other on top of the mortar mixer. Held: the mortar mixer was within the meaning of section 1 of the Act because it was employed as a necessary support in the performance of the worker's task); *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 355 N.E.2d 164 (worker was injured when he fell off a stack of pilings at a construction site. Held: pilings were not within the scope of the Act because they were not intended for use as a scaffold or support).

Second, courts inquire into whether the injury has some connection with the hazardous nature of the device in question. For example, in *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011, the unfinished character of the floor had no connection with the inspector's injury. Instead, the inspector had tripped over debris and fallen, hitting himself on a reinforced steel column. Similarly, in *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, plaintiff foreman was inspecting a building under construction when he tripped, fell against a ladder, and then fell through the open unbarricaded baffle chamber to the basement 17 or 18 feet below. The court held that neither the floor nor the ladder were within the meaning of section 1 in this particular fact situation. First, the floor was not being used as a working platform, a scaffold or for the purpose of completing construction. Second, although a ladder is expressly listed in section 1 of the Act, the use of the ladder in this situation takes it out of the Act. The foreman did not fall off of the ladder. Rather, he fell into it while trying to regain his balance. Thus, the hazardous nature of the ladder was not the cause of the foreman's injury. As the court stated, "The ladder may well have been placed or left in the baffle area in a negligent manner and may have contributed to plaintiff's injury, but the testimony shows no violation of the Structural Work Act." *Tenenbaum v. City of Chicago*

(1975), 60 Ill. 2d 363, 371.

Finally, courts inquire into the element of danger involved in the use of the support device and whether this was the danger which the legislature was attempting to alleviate in enacting the statute. *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724.

Application of the guideline to the particular facts at bar indicates conclusively that the planks and concrete forms erected on the construction site as temporary walkways were supports within the meaning of the Act. In reaching this determination, we looked first to the intended use of the planks at the time of the injury. Defendants argue that the planks and cement forms were erected across the construction site for use as a walkway and nothing more, thus placing the situation squarely within the precedential parameters of *Quinn* and *Tenenbaum*. Plaintiff, on the other hand, acknowledges that the planks were erected as a walkway, but further adds that the walkway was intended to prevent the workmen and their materials from sinking into the mud. It is undisputed that the construction site was ungraded, wet and covered in mud so deep that plaintiff, at one time, sunk up to the top of his hip boots. Plaintiff's accident itself further illustrates the severity of the slippery conditions. Thus, it is our opinion that as a result of the unusually muddy conditions, planks and concrete forms were erected as supports specifically intended to prevent the workmen and their materials from sinking into the mud. In so finding, we emphasize that our decision is premised on the particular ground conditions which existed at the time of plaintiff's injury.

The second element of the guideline is whether there was a connection between the injury and the hazardous nature of the supports. At the outset, we recognize that there is nothing inherently hazardous about planks placed on the ground. In our case, however, the planks became hazardous when they were placed, unanchored,[3] on the slippery, ungraded, muddy surface for use as a walkway by men carrying a variety of construction materials and equipment. Because plaintiff was injured when the planking slipped on the muddy surface, there is no question that the connection criterion has been satisfied.

The last element of the guideline is whether the danger involved was intended to be covered by the Act. An analysis of this element will concomitantly resolve defendants' allegation that plaintiff was not

---

[3]While our analysis focuses on use of the planking as a support, we note that plaintiff also has a cause of action under the Act for defendants' failure to provide adequate braces for the planking which would have prevented its shifting on the muddy surface. *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724; *Navlyt v. Kalinich* (1970), 125 Ill. App. 2d 290, 260 N.E.2d 855.

engaged in the kind of extrahazardous activity the Act is designed to protect. In support of their position, defendants rely on *Crafton v. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817. In *Crafton*, plaintiff, an ironworker, was loading structural steel onto a tractor which was equipped with a 30-foot side-boom hoist. The tractor was used to haul the steel to the construction site several hundred yards away. The area between the storage yard and the place of construction was covered in deep mud, ranging in depth from six inches to two feet. After he loaded the tractor, plaintiff started to climb on the back of it for a ride to the site. Before plaintiff was seated, the operator put the tractor in reverse, which caused it to lurch backward, throwing plaintiff off the rear. The *Crafton* court held that the facts of the case did not fall within the scope of the Act because the hoist which was attached to the tractor had nothing to do with the injury. Instead, the injury was caused by the lurching of the tractor, which in itself was not a "scaffold, hoist, crane, stay, ladder, or support." In making its determination, the *Crafton* court did not address the issue of whether transporting materials at a construction site was an activity covered by the Act. Therefore, we find *Crafton* inapplicable to the instant case.

However, we do find *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573, applicable to the instant case and also dispositive of the transporting issue before us. In *McNellis*, plaintiff's deceased husband received fatal injuries while unloading component parts of a steam generator from a railroad car on Commonwealth Edison's property. The unloading area was situated approximately one-half mile from the actual building site. In upholding the appellate court's decision that the work being done by the decedent at the time of his injury was a Structural Work Act activity, the supreme court stated, " '[T]he record fairly demonstrates that the unloading in question was an integral part of the entire operation of erecting the generating units.' " (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 150.) Unlike the case at bar, in *McNellis*, the decedent's contract provided that the general task of erecting generators would necessitate the incidental task of unloading. However, we do not find the lack of testimony regarding such a provision in the present case to be relevant to our decision. Rather, we look to plaintiff's specific function at the site and the conditions of the site in making our determination as to whether unloading was an integral part of plaintiff's duties. Unequivocally, the facts before us indicate that it was. In order for plaintiff to perform his duties as a roofer, he needed certain materials and equipment because of the muddy site

conditions, that material and equipment could not be delivered directly to the site; it had to be carried from the perimeters of the site via plank walkways. Defendants would have us believe that plaintiff was a roofer while at the building itself, and a delivery man (hence, not covered by the Act) when it became necessary for him to carry equipment from his truck to the building. This is an untenable contention and one that runs counter to the very purpose of the Act.

Therefore, premised on the special circumstances at bar regarding site conditions and intended use of the planks, we reverse the trial court's decision and remand the cause to the trial court with directions to reinstate the Structural Work Act count of plaintiff's complaint and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LORENZ and MEJDA, JJ., concur.