ROBERT J. LANGLEY, Plaintiff-Appellant and Cross-Appellee, v. J. L. SIMMONS CONTRACTING COMPANY, Defendant-Appellee (H. K. Ferguson, Third-Party Defendant and Cross-Appellant).

Fifth District   No. 5—85—0541

Opinion filed February 25, 1987.

Robert D. Larson, of Smith, Larson & Pitts, Ltd., of East Alton, for appellant.

Michael B. Constance and Edward J. Szewczyk, both of Donovan, Hatch & Constance, P.C., of Belleville, for appellee J. L. Simmons Contracting Company.

Stephen J. Maassen, of Hoagland, Maucker, Bernard & Almeter, of Alton, for other appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

This cause arises from injuries incurred by plaintiff, Robert J. Langley (Langley), while working as general superintendent on a construction project. Langley was employed by third-party defendant, H. K. Ferguson Company (Ferguson). Ferguson was hired by Carlisle Tire and Rubber Company (Carlisle) as a general contractor to supervise the construction of a factory designed to manufacture rubber material. Defendant, J. L. Simmons Contracting Company (Simmons) was hired by Ferguson as a subcontractor to install equipment. Sim-

mons contracted with Wilbur Waggoner Equipment Rental and Exca-vating Company (Waggoner) for the use and operation of a "cherry picker" crane. While making a job inspection, Langley entered a work area assigned to Simmons. Langley stepped onto a stack of scaffold boards less than 16 inches high. While walking across the boards, a board tipped, Langley's feet "went down" and he ended up sitting on the floor in oil, sustaining injuries.

Langley filed a complaint against Carlisle, Simmons and Wag-goner alleging negligence and violation of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). Waggoner paid Langley $150,000 pursuant to a settlement agreement. Langley recovered $103,364.03 from his workers' compensation claim against Ferguson. Simmons filed a third-party complaint against Ferguson seeking con-tribution in the event that Simmons was held liable to Langley. The trial court entered a directed verdict in favor of Carlisle on both counts and in favor of Simmons on the Structural Work Act count. The jury returned a verdict for Langley and against Simmons in the amount of $1,000,000. The jury also found Langley 90% at fault and the verdict was reduced to $100,000. In the third-party action, the jury found that Simmons and Ferguson were equally at fault as to Langley and that Simmons was therefore entitled to 50% contribution from Ferguson. Upon considering the parties' post-trial motions, the trial court found that Simmons was entitled to a setoff of $150,000, the amount of Waggoner's settlement, and entered a judgment in fa-vor of Langley and against Simmons for $0. Because Simmons was required to pay nothing to Langley, Ferguson was not ordered to make any contribution to Simmons. Finally, the trial court reduced the amount of Ferguson's workers' compensation lien by $50,000, "based upon the jury's third-party contribution verdict."

On appeal, Langley challenges the trial court's directed verdict on the Structural Work Act claim and the jury's finding of comparative negligence. On cross-appeal, Ferguson challenges the trial court's re-duction of the workers' compensation lien.

■■ ■ Langley's first contention is that the trial court erred in entering a directed verdict in favor of Simmons on his claim under the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, pars. 60, 69). Al-though the Structural Work Act is to be liberally construed, it was never intended to cover all construction activities or all injuries in-curred at construction sites. (*Deibert v. Bauer Brothers Construction Co.* (1986), 145 Ill. App. 3d 915, 917, 495 N.E.2d 1348, 1349.) Section 1 specifically enumerates those devices covered by the Act by provid-ing that "all scaffolds, hoists, cranes, stays, ladders, supports, or

other mechanical contrivances, erected or constructed \*\*\* for the use in the erection of any \*\*\* structure, shall be erected and constructed in a safe \*\*\* manner \*\*\* to give proper and adequate protection to the life and limb of any person \*\*\* employed or engaged thereon." (Ill. Rev. Stat. 1985, ch. 48, par. 60.) In determining whether a device falls within the purview of the Act, both the identity of the device and its intended use at the time of injury must be considered. *Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 343, 491 N.E.2d 1246, 1248.

Langley argues that the stack of scaffold boards was used as a means of support and, therefore, falls within the scope of the Act. The cases relied upon by Langley are distinguishable from the instant cause. In *Acquaviva v. Sears Roebuck & Co.* (1979), 68 Ill. App. 3d 588, 386 N.E.2d 381, plaintiff was injured while standing partly on a wheelbarrow and partly on a mortar mixer in order to operate the mixer. In holding that the mixer was a support covered by the Act, the court focused on the fact that plaintiff employed the machine as a "necessary support in pursuance of his task" and was "dependent upon both the wheelbarrow and the machine, instead of the concrete floor \*\*\* in order to reach the necessary control." (68 Ill. App. 3d 588, 591, 386 N.E.2d 381, 383.) In *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 295, 448 N.E.2d 1011, 1012, planks and concrete forms were set up as walkways to prevent workers from sinking into deep mud which covered the construction site. Plaintiff was injured while walking on one of the walkways. (114 Ill. App. 3d 293, 295, 448 N.E.2d 1011, 1012.) In concluding that the planks and concrete forms were erected as supports specifically intended to prevent the workmen from sinking into the mud, the court emphasized that its decision was premised on the particular ground conditions which existed at the time of the injury. (114 Ill. App. 3d 292, 298, 448 N.E.2d 1011, 1015.) Similarly, in *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 159-60, 479 N.E.2d 1007, 1010, the court held that the peculiar ground conditions warranted the use of a plank or board as a support and the failure to provide such support fell within the purview of the Act.

Unlike the circumstances of *Acquaviva,* Langley's testimony reveals that he did not walk across the boards out of necessity. His access to the other part of the building was not blocked by the stack of boards. Langley testified that he would have had to walk an additional 50 feet to go around the boards and that he cut across the boards for his own convenience. Unlike *Ashley* and *Rambert,* no peculiar ground conditions warranted the use of the boards as a means of

support. Here, the boards were stacked on a concrete floor.

*Schultz v. Ottawa Silica Co.* (1985), 133 Ill. App. 3d 412, 478 N.E.2d 857, is analogous to this cause. In *Schultz,* plaintiff was injured while pulling an individual scaffold section out of a tangled pile of scaffold boards. Evidence indicated that on occasion plaintiff would climb up on the pile in order to remove individual pieces. (133 Ill. App. 3d 412, 412-13, 478 N.E.2d 857, 858.) In concluding that the pile of scaffold sections was not a scaffold or support within the meaning of the Act, the court stated that "[t]he purpose of piling the individual scaffold pieces on the ground was not to provide a support structure for workers to use on the site." (133 Ill. App. 3d 412, 414, 478 N.E.2d 857, 859.) Similarly, in *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 933, 355 N.E.2d 164, 166, the court reasoned that "[t]he fact that a worker chooses to walk upon a stack of material instead of around it does not convert the materials into a scaffold [or support] within the meaning of the Act."

■ The rationale of *Schultz* and *Swendsen* applies to this cause. Nothing in the record indicates that the placement of the stack of scaffold boards was for any reason other than storage. Simply because Langley chose to walk across the boards, instead of around them, does not convert them into a support device. We conclude that the stack of boards does not constitute a support within the meaning of the Act.

■ Langley also maintains that the Act was violated by the unsafe condition created by the "cherry picker" crane leaking hydraulic fluid onto the floor where Langley fell. Langley testified that when he slipped off the stack of boards, he landed on the floor in an oily substance which appeared to have leaked from the crane. Langley also stated that he did not know the extent to which the oil contributed to his fall and subsequent injury. Even if one of the devices enumerated in the Act is involved, the Act does not apply unless the injury has some connection with the hazardous nature of the devices named in the Act. (*Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 537, 487 N.E.2d 1124, 1125; *Cooley v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 685, 691, 442 N.E.2d 1330, 1335.) The essential common characteristic of the items enumerated in section 1 of the Act is that they are all support devices, either for men or materials. (*Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 1129, 441 N.E.2d 889, 892.) The obvious hazard of support devices is that workers or materials may fall off such devices or that the devices themselves may fall, injuring the workers or those passing by the device. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d

363, 371, 325 N.E.2d 607, 612.) At the time of Langley's injury, the crane was stored indoors and was not in use. Neither Langley nor anyone else was attempting to operate the crane. At the time of injury, the crane was serving no function whatsoever. The hazard of leaking fluid involved in the instant cause could occur in any piece of machinery. Langley could just have easily slipped on oil which had leaked from an automobile, lawnmower or some other object not contemplated by the Act and suffered the same injury. (60 Ill. 2d 363, 371, 325 N.E.2d 607, 612.) The injury incurred by Langley has absolutely no connection with the use of the crane as a support device. Therefore, Langley has failed to establish a violation of the Act. In accordance with the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, we conclude that the trial court properly entered a directed verdict in favor of Simmons on Langley's claim under the Structural Work Act.

■■■ Langley's final contention is that the jury's finding that he was 90% at fault is contrary to the manifest weight of the evidence. The manifest weight of the evidence standard applies where the jury's verdict assessed the degree of plaintiff's comparative negligence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) A verdict is against the manifest weight of the evidence where it is palpably erroneous and wholly unwarranted or appears to be arbitrary, unreasonable and not based upon the evidence. (132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) Langley argues that his conduct in walking across the stack of boards when compared to Simmons' conduct in creating a barricade and failing to clean up the oil does not support the jury's finding that Langley was 90% comparatively negligent. We are not persuaded by Langley's argument. Langley's own testimony reveals that he could have walked an additional 50 feet and gone around the boards. He chose to walk across the boards as a matter of convenience. With regard to the oil, Langley testified that he didn't know if the oil contributed to his fall. He also testified that there were no footprints on the oil and that it appeared to be fresh. Langley's injury occurred on a Saturday when none of Simmons' employees were working. The jury could have concluded that Simmons was not aware of the leak and had no opportunity to clean up the oil.

Viewing the evidence in a light most favorable to Simmons (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236), we conclude that the evidence produced at trial was sufficient to support the jury's verdict assessing the degree of negligence attributable to Langley.

On cross-appeal, Ferguson challenges the trial court's reduction of the amount of its workers' compensation lien. The court reduced the amount of the lien by $50,000 based upon the jury's verdict that Simmons and Ferguson were equally at fault and that Simmons was entitled to contribution. Section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)) allows an employer to recoup the amount of compensation paid by him to his injured employee from the proceeds of any judgment or settlement obtained by the employee from a third party. This section allows both the employer and employee to reach the true offender while preventing the employee from obtaining a double recovery. (*J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 112, 483 N.E.2d 273, 276.) In *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14, 461 N.E.2d 382, 388, the supreme court held that, "under the Contribution Act, the employer's immunity from suit in tort by its employee as plaintiff is not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff." Ferguson does not challenge Simmons' right to seek contribution, but asserts that the trial court improperly applied the jury's finding that Simmons and Ferguson were equally at fault to Ferguson's right of recoupment. In *Doyle*, the court noted that the right of contribution from an employer may impact upon the right of recoupment by the employer. (101 Ill. 2d 1, 14-15, 461 N.E.2d 382, 389.) However, because the parties had not raised or argued the issue, the court did not indicate how the recoupment provision may affect the operation of the Contribution Act, but simply stated that "some accommodation between these two statutes may be in order." (101 Ill. 2d 1, 14-15, 461 N.E.2d 382, 389.) Under the circumstances of the instant cause, the statutes are self-accommodating.

Langley received $103,364.03 in workers' compensation from Ferguson. Ferguson in turn asserted a lien against any judgments or settlements subsequently obtained by Langley from third parties. (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b).) Langley received a settlement of $150,000 from Waggoner. Although Langley also obtained a judgment against Simmons, reduced based upon Langley's comparative negligence to $100,000, Simmons was granted a setoff of $150,000 and, consequently, paid nothing to Langley. (See Ill. Rev. Stat. 1985, ch. 70, par. 302(c).) Langley is entitled to retain $46,635.97 and Ferguson is entitled to recoup $103,364.03. (See Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b); *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 7, 269 N.E.2d 295, 298.) The jury's finding that Simmons and Ferguson were equally at fault and that Simmons was entitled to con-

tribution does not affect Ferguson's right of recoupment. An employer, whether negligent or not, has a right to recover compensation payments paid to an injured employee under section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)). (*Carver v. Grossman* (1973), 55 Ill. 2d 507, 516, 305 N.E.2d 161, 165.) The trial court's reduction of the amount of the lien impermissibly interjects the concept of fault into the compensation award contrary to the intent of the statute to provide compensation to injured employees regardless of fault. See *J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 112, 483 N.E.2d 273, 276.

■ In addition to circumventing the intent of the Workers' Compensation Act, the court's action serves to grant Langley a partial double recovery. The jury's verdict awarded Langley $100,000 on his claim against Simmons. Langley had already received $150,000 from his settlement with Waggoner and, by virtue of the setoff provision of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 302(c)) (Contribution Act), Simmons was not required to pay any sum of money to Langley. Consequently, Simmons was not entitled to contribution from Ferguson. (Ill. Rev. Stat. 1985, ch. 70, par. 302(b).) The trial court's reduction of the lien leads to the bizarre result that Simmons, against whom Langley asserted his cause of action, paid nothing to Langley, whereas Ferguson was required to pay his pro rata share of the common liability to Langley, who was not a party to the contribution action. Langley was entitled to recover $150,000 and the court's reduction of Ferguson's lien improperly allows Langley to recover an additional $50,000. We do not believe that the trial court's actions achieve the type of accommodation between the Workers' Compensation Act and Contribution Act which the court in *Doyle* (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 15, 461 N.E.2d 382, 389) suggested may be necessary. We conclude that the trial court erred in reducing the amount of Ferguson's workers' compensation lien.

For the reasons given, that part of the judgment of the circuit court of Madison County entering a directed verdict in favor of Simmons on Langley's Structural Work Act claim and finding Langley 90% comparatively negligent is affirmed. The judgment reducing Ferguson's workers' compensation lien is reversed.

Affirmed in part; reversed in part.

KASSERMAN and HARRISON, JJ., concur.