LEE A. FOSTER, Plaintiff-Appellant, v. DEVILBISS COMPANY, Defendant-Appellee.

First District (1st Division)   No. 87—1240

Opinion filed August 1, 1988.—Rehearing denied September 29, 1988.—Modified opinion filed October 3, 1988.

James T. J. Keating, P.C., of Chicago (James T. J. Keating, Elizabeth S. Davis, and Faustin A. Pipal, Jr., of counsel), for appellant.

Steven B. Belgrade and John A. O'Donnell, both of Andich & Belgrade, and Bernard R. Nevoral, of Bernard R. Nevoral & Associates, Ltd., both of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This products liability case was brought by plaintiff Lee Foster against defendant Devilbiss Company to recover for injuries allegedly caused by an airless spray gun manufactured by Devilbiss. After a jury trial, judgment was entered for Foster, which Devilbiss appeals. For the reasons below, we affirm in part, and reverse and remand in part.

The Devilbiss Model JGN 501 or JGN 502 airless spray gun is a hand-held device that sprays paint under very high pressure. At close range, the pressure is sufficient to inject the paint into one's body. To prevent such mishaps, three safety features are incorporated into the design of the spray gun. A nozzle guard prevents getting close enough to the nozzle to cause injury. A trigger guard that covers the trigger from the gun barrel to the bottom of the grip prevents inadvertent triggering. The trigger guard is held on by three screws and may be replaced if damaged. Finally, the spray gun has a safety lock, a mechanism that screws in to block the trigger, making it impossible to activate the spray gun. The Model 501s had been shipped without nozzle guards, which were later supplied through a retrofitting program undertaken by Devilbiss. The Model 502s were shipped with the nozzle guard. The spray gun that injured Foster was manufactured by Devilbiss, either Model JGN 501 or JGN 502.

Lee Foster was a painter employed at the General Motors Foundry in Danville, Illinois. While at work on February 15, 1979, another worker handed the spray gun to Foster for cleaning. While cleaning the spray gun, Foster fumbled it and hit the trigger, causing the gun to inject paint into his right hand. Foster brought a strict products liability suit against Devilbiss, alleging that the spray gun was defectively designed and unreasonably dangerous.

After the suit was filed, General Motors, Foster's employer, pursuant to section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)), obtained a workers' compensation lien of $40,464.27 on any judgment Foster received from Devilbiss. Devilbiss named General Motors (GM) as a third-party defendant and settled the third-party action before trial. As part of the settlement, GM assigned its workers' compensation lien to Devilbiss.

At trial, Foster testified that the spray gun that caused the injury had neither the nozzle guard nor the trigger guard at the time of the injury. Further evidence showed that the trigger guard had been forcibly ripped off the gun. Foster's expert testified that the gun was unreasonably dangerous without the nozzle guard and that the safety lock could become inoperative when paint accumulated on its threads.

Devilbiss contended that removal of the guards, by design or force, constituted substantial and unforeseeable alterations of the spray gun after it left Devilbiss' control, relieving Devilbiss of liability as a matter of law. Devilbiss further contended that the safety lock mechanism was not of defective design.

The jury returned a verdict in favor of Foster, finding Foster 1% at fault for his injuries. The trial court entered judgment accordingly. In a post-trial motion to reduce the workers' compensation lien, Foster argued that Devilbiss had failed to provide Foster with records establishing $7,524.33 in medical expenses. The court granted Foster's motion and reduced the lien by $7,524.33. The court also reduced the lien by $3,975.94 in expenses and $8,233.74 in attorney fees. Subsequently, Devilbiss brought the instant appeal.

Devilbiss first argues that the verdict of liability was contrary to the manifest weight of the evidence because Devilbiss was relieved of liability as a matter of law. Devilbiss bases its argument on two contentions: first, that the spray gun was substantially altered in an unforeseeable manner after it left Devilbiss' control, and second, that Foster failed to exclude other causes of injury. Both contentions are without merit.

A manufacturer will not be held liable for injury due to unforeseeable alterations to its product (*Augenstine v. Dico Co.* (1985), 135 Ill. App. 3d 273, 276, 481 N.E.2d 1225, *appeal denied* (1985), 111 Ill. 2d 553), but it is reasonably foreseeable that where parts are removed with relative ease, and hinder the use of the product, they may be removed and not replaced. (See *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12, 310 N.E.2d 1 ("Foreseeability [is] that which is objectively reasonable to expect"); *Consolidated Aluminum Corp. v. C. F. Bean Corp.* (5th Cir. 1987), 833 F.2d 65, 66-67.) In the instant case, the trigger guard was removed by loosening three screws, and there was testimony that the trigger guard was removed because the guard left insufficient room to operate the trigger while wearing gloves. There also was testimony that the nozzle guards were removed because paint build-up in the guard clogged the nozzle, and workers perceived operation of the guns without the guards safer than frequent cleaning of the nozzle, because it was necessary to place one's hands in front of the nozzle to clean it. The jury was entitled to determine whether removal of the trigger and nozzle guards was reasonably foreseeable. That the guards may have been removed by force does not take the determination of foreseeability from the province of the jury. Evidence was presented which supports the jury's finding of liability, and Devilbiss was not relieved of liability as a matter of law merely be-

cause a different conclusion might have been reached.

■ Devilbiss also argues that it was relieved of liability as a matter of law because Foster failed to rule out other causes of injury. Devilbiss asserts that a manufacturer is relieved of liability where a proximate cause besides the defective product is present. Devilbiss, however, incorrectly relies on *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663, in which summary judgment was granted in favor of the defendant not because the plaintiff failed to exclude all other causes, but because the evidence relied on by plaintiff to establish her case was too circumstantial and speculative. Further, where alteration by a third party was found to be a superseding cause, as Devilbiss claims here, the alteration had changed the manner in which an operator used the machine. See *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232; *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36.

In the instant case, the jury found that removal of the guards was reasonably foreseeable and did not alter the manner of operating the spray gun. Further, liability was not based solely on the absence of the nozzle and trigger guards, but also upon the failure of the safety mechanism; removal of the guards may have been a contributing factor to Foster's injury, but was not a superseding cause. Therefore, Devilbiss was not relieved of liability as a matter of law. The verdict of liability was not contrary to the manifest weight of the evidence.

The second argument raised by Devilbiss is that it was prejudiced by three instances of improper conduct. First, Foster's counsel made remarks that caused witnesses to change their testimony. Second, Foster's counsel and expert witness conducted undisclosed and improper experiments in front of the jury. Third, Foster's counsel made improper remarks during closing arguments.

■ Devilbiss claims that Foster's counsel twice interjected statements contradicting witnesses' testimony and on both occasions caused the witnesses to change their testimony. On both occasions, however, counsel's remarks were stricken and the jury instructed to disregard them. This has been held sufficient to cure prejudice caused by improper conduct. See *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 892, 452 N.E.2d 572, *appeal denied* (1983), 96 Ill. 2d 565.

■ Devilbiss next claims that a demonstration in front of the jury, bending a spray gun trigger guard, was prejudicial. Foster's expert, testifying that the trigger guard was flimsy, bent a trigger

guard that was being used as a demonstrative exhibit. Foster's attorney then took the trigger guard and bent it again in front of the jury. The trial court sustained Devilbiss' objection, and the jury was instructed to disregard the demonstration by plaintiff's counsel.

Devilbiss nevertheless argues that allowing counsel's demonstration was reversible error because experiments must be substantially similar to the actual conditions of the case. (*Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 334 N.E.2d 764, *appeal denied* (1975), 61 Ill. 2d 600.) Devilbiss has confused the use of demonstrative exhibits with experiments carried out by experts to form an opinion. Experiments must be substantially similar to the actual conditions of the case, pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), but Rule 220 is inapplicable to the use of a demonstrative exhibit.

Devilbiss further contends that where demonstrative evidence is used for dramatic effect rather than factual explanation to the jury, use of the demonstrative evidence should be regarded as reversible error. Use of demonstrative exhibits should be relevant and actually explanatory, and where they meet these standards, courts have generally allowed the exhibits regardless of their emotional effects. (*Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, 134 N.E.2d 526.) In the instant case, the witness stated that the trigger guard was "flimsy" and bent the guard with his hand. The jury could reasonably be expected to gauge the strength of a piece of metal that could be bent by hand, and the demonstration was not so shocking or emotionally charged as to require reversal. The demonstration appeared both relevant and explanatory, and the trial court would not have abused its discretion had it allowed the demonstration, rather than sustaining Devilbiss' objection and instructing the jury.

Finally, Devilbiss argues that Foster's attorney made improper remarks during his closing argument. Devilbiss asserts that comments made concerning prior accidents with the model of spray gun in issue, failure to produce corroborating witnesses, misstatements of law, and repetition of facts not in evidence deprived Devilbiss of a fair trial. Substantial prejudice, however, has typically involved name calling and derogatory characterizations of opposing counsel and adversary witnesses (*e.g., Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 346 N.E.2d 448; *Paulsen v. Gateway Transportation Co.* (1969), 114 Ill. App. 2d 241, 252 N.E.2d 406) or glaring disregard for procedure (*Morgan v. Rogers* (1975), 30 Ill. App. 3d 346, 332 N.E.2d 476). The instant case, however, shows neither personal attacks nor disregard for procedure. Devilbiss was not prejudiced.

■ Devilbiss next argues that the jury instructions given were erroneous and that the trial court further erred in not giving certain instructions. The jury instructions given, however, informed the jury of the applicable law (see *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572, *appeal denied* (1983), 96 Ill. 2d 565), and the instructions refused were either inapplicable or would have been duplicative. Thus, there was no error in the jury instructions.

■ Devilbiss also argues that the trial court erred in allowing the testimony of Foster's expert witness concerning Foster's future medical treatment, allowing cross-examination of Devilbiss' expert concerning OSHA regulations after the expert had testified that no OSHA regulations applied to spray guns, and allowing into evidence all documents except those specifically objected to by Devilbiss. Future treatment may be considered as an element of damages, and because Devilbiss raised the issue of the OSHA regulations, Foster was entitled to cross-examine. With respect to admission of the documents and all of these rulings, there was no clear abuse of discretion by the trial court. The judgment of liability against Devilbiss is affirmed.

■ Turning to the award of damages, Devilbiss argues that the trial court erroneously reduced the workers' compensation lien by the amount of medical expenses that Foster failed to prove at trial. We agree. Before trial, General Motors assigned to Devilbiss its workers' compensation lien for $40,464.27, including $16,271.56 for medical expenses. At trial, Foster proved $8,747.23 in medical expenses, which the jury awarded. After trial, Foster contended that the workers' compensation lien held by Devilbiss should be reduced by $7,524.33, the amount of additional medical expenses that Devilbiss had not disclosed to Foster in time for trial. Foster maintained that Devilbiss had a duty to disclose the expenses, and knew or should have known that Foster was proving only a part of the medical expenses. Devilbiss argued that it had disclosed the additional expenses when it gave Foster GM's entire workers' compensation file and that Devilbiss should not be made responsible for Foster's failure to prove his case. The trial court allowed the additional expenses on equitable principles and reduced the workers' compensation lien accordingly. We find this was error.

The workers' compensation lien is a statutory remedy provided by section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b)) and intended to reimburse the employer for compensation to an injured employee. Prior to 1959, section 5(b) provided that the employer be reimbursed where the injury "was not proxi-

mately caused by the negligence of the employer or his employees." (Ill. Rev. Stat. 1957, ch. 48, par. 138.5(b).) In 1959, the above language was deleted by the legislature. Section 5(b) has since been interpreted to mean that fault was not intended to be a factor in reimbursing the employer. (See *Carver v. Grossman* (1973), 55 Ill. 2d 507, 305 N.E.2d 161; *Kochan v. Arcade Electric Co.* (1987), 160 Ill. App. 3d 1, 512 N.E.2d 1295; *Langley v. J. L. Simmons Contracting Co.* (1987), 152 Ill. App. 3d 899, 504 N.E.2d 1328.) The legislature intended, in the 1959 amendment, to remove impediments to full reimbursement of the employer. By expressly removing fault as a factor to be considered in reimbursement, the legislature implicitly removed other factors from consideration.

Had the legislature intended the workers' compensation lien to be subject to a variety of setoffs, it could easily have supplied them. The present section 5(b) provides for the costs and expenses setoff and attorney fees, and following the rule of *inclusio unius est exclusio alterius* (see *Browning-Ferris Industries, Inc. v. Pollution Control Board* (1984), 127 Ill. App. 3d 509, 511, 468 N.E.2d 1016, *appeal denied* (1984), 101 Ill. 2d 581; *The 2416 Corp. v. Chicago Transit Authority* (1975), 26 Ill. App. 3d 468, 325 N.E.2d 692, *aff'd* (1976), 64 Ill. 2d 364, 356 N.E.2d 20), we must assume that had the legislature intended other setoffs to the workers' compensation lien, they would have been specified. Because the legislature acted to remove impediments to the employer's full reimbursement, and specified setoffs for only costs, expenses and attorney fees, we hold that the trial court erred when it reduced the workers' compensation lien by the amount of medical expenses not proved at trial.

There remains the issue of whether the $7,524.33 in additional medical expenses should be added to the overall judgment if reduction of the workers' compensation lien was improper. We hold that it should not. In the case against Devilbiss, a products liability action against a third party, medical expenses constituted damages. Foster had incurred medical expenses of $16,271.56, of which he proved $8,747.23. The remaining $7,524.33 was not proven at trial, and is therefore not recoverable.

The trial court allowed the additional expenses on equitable grounds, reasoning that, as assignee of GM's workers' compensation lien, Devilbiss assumed the same duty GM would have had to present all necessary evidence to recover under the lien and to assist Foster in making his claim. The trial court ruled that by merely making records available, Devilbiss had not fulfilled its duty. The trial court also noted a potential conflict of interest this duty imposed on Devilbiss.

This court finds no duty by the lienholder to assist the employee in making his claim against a third party either by statute or precedent. A lienholder would, of course, have an economic incentive to present evidence to make the amount of the lien as large as possible: an employer would seek the largest amount to be reimbursed, and a defendant to whom the lien was assigned would seek to reduce the amount ultimately paid out on the judgment. But economic interests do not create a duty. Had Devilbiss the duty to assist Foster in making his claim, Devilbiss would have been placed in the position of conflicting interests, but producing records according to the request of the plaintiff would place the defendant-lienholder in no greater position of conflict of interest than any discovery request.

Foster claims that the additional medical expenses were not disclosed by Devilbiss until after the trial. The record, however, shows that Foster had been provided with GM's entire workers' compensation file concerning Foster. Thus, Foster had the means to prove the additional expenses at trial. Even if Foster had not been provided all of the records pertaining to medical expenses, the burden rested upon him to discover the records, and Devilbiss had only the duty to produce the records as requested.

We therefore hold that the lienholders have no affirmative duty to assist the plaintiffs in establishing their claims against a third party, although it is in their interest to do so. In the instant case, Foster had the means to establish at trial the total amount of medical expenses of $16,271.56, of which he proved $8,747.23. The remaining $7,524.33, not proven, is not recoverable.

■ With respect to the costs, expenses and fees that were legitimately subtracted from the workers' compensation lien pursuant to section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.5(b)), the trial court apparently calculated attorney fees as $8,233.74, 25% of the improperly reduced lien, and not $10,116.07, which is 25% of the original lien of $40,464.27.

The workers' compensation lien was also reduced by $3,975.94 for expenses. Devilbiss argues that the trial court erred in allowing as part of the *pro rata* share unsupported and improper expenses by Foster. We are not persuaded.

Devilbiss contends that some $3,851.84 in expenses were unsupported by documentation, and clearly fall outside the scope of "reasonably necessary" expenses. Devilbiss notes that the trial court allowed reimbursement of Foster's travel and lodging expenses during the trial and $600 reimbursement of wages and travel for a witness that remained in the Chicago area during the trial but was not called

at trial. The trial court also allowed reimbursement for Foster's counsel's meals during trial, including consumption of alcohol. The record indicates, however, that the trial court reviewed in-house memoranda prepared by Foster's attorneys and the law firm concerning expenses paid and found the memoranda sufficiently reliable to support the expenses asked. Therefore, the trial court's rulings concerning costs and expenses is affirmed.

In summary, the judgment in favor of Foster and against Devilbiss is affirmed. The jury found that Foster's injury had been caused by an unreasonably dangerous product, with defective design, a condition that existed when the product left the control of Devilbiss. The rulings of law were correct, the findings of fact were consistent with the manifest weight of the evidence, and the discretionary rulings well considered. We hold that the workers' compensation lien may not be reduced, except as provided by statute. The trial court's calculation of statutory costs in the amount of $3,975.94 is affirmed. Because Foster failed to prove the additional medical expenses at trial, those expenses cannot be recovered. Therefore, this case is remanded to the trial court with instructions to allow the workers' compensation lien in its full amount and to recalculate and assess attorney fees accordingly.

Affirmed in part; reversed in part and remanded with directions.

BUCKLEY and MANNING, JJ., concur.