RONALD PAGE, Plaintiff-Appellant, v. THE CORLEY COMPANIES, INC., Defendant-Appellee.

First District (4th Division)  No. 84—177

Opinion filed February 7, 1985.

Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago (Edwin M. Plaza, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Michael J. Grant and Sean P. Kennedy, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Ronald Page (Page) appeals from the order of the Cook County circuit court which entered summary judgment in favor of defendant Corley Companies, Inc. (Corley). Page sought recovery for personal injuries he allegedly sustained when he slipped and fell upon a masonite floor covering while working ·at a construction site for which Corley was general contractor. The sole question for our review is whether the masonite sheets placed on top of a terra-cotta lobby floor were a "support" within the scope of the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). We affirm the

trial court's decision that they were not.

Page was an employee of Leader Plumber, a plumbing subcontractor hired by Corley to provide plumbing for a portion of a condominium complex under construction in Northbrook. Roughly two to three weeks prior to his injury, terra-cotta tiles were put in place on the lobby floor of the building at which he was working. When the terra-cotta had hardened a few days later, masonite sheets roughly four feet by eight feet in size and one-quarter inch thick were butted together and taped in place directly on top of the entire lobby floor. This masonite covering was placed over the terra-cotta in order to protect it from damage. Although the building was then approximately 95% completed, some finishing work was still required on the upper floors and as a result the lobby was used by workers as a means of ingress and egress to and from the building.

Page was injured when he walked through the lobby in order to obtain additional tools from his truck, which he had parked outside the building. As he crossed the lobby, his foot caught an edge of the masonite, which had begun to warp and become uneven, causing him to fall and injure his right arm. On December 12, 1980, he filed his one-count complaint against Corley based upon a violation of the Act. After discovery, Corley filed its motion for summary judgment on April 11, 1983. A response and reply were subsequently filed by both parties. On November 9, the trial court granted summary judgment in favor of Corley on the ground that the Act was inapplicable. Page's timely appeal followed.

■ Page argues initially that there exists a genuine issue of material fact which precluded summary judgment. Specifically, he contends that whether the masonite covering was a support under the Act is a disputed factual issue which should be determined by a trier of fact. We disagree. This contraverted issue is not one of fact but one of law, since the question of whether a certain device is governed by the Act is a matter of statutory construction and thus a question of law for the court to determine. (See, *e.g., People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 313, 332 N.E.2d 532.) Consequently, we must consider Page's second claim that the masonite covering fell within the purview of the Act.

Section 1 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 60) provides:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected

and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The purpose of the Act is to protect individuals employed in dangerous and extrahazardous occupations on or near a construction site. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573; *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 847, 463 N.E.2d 921.) It is not intended, however, to cover all construction-related injuries. *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536, 263 N.E.2d 817; *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 522, 439 N.E.2d 12.

Page claims that the masonite covering upon which he fell is a "support" under section 1. The Act does not define this term, and its meaning is not clear and unambiguous since it is usable in many contexts and has various shades of meaning. We note, however, that a "support" is classified in section 1 with other devices such as "scaffolds, hoists, cranes, stays, ladders, *** or other mechanical contrivances." (Ill. Rev. Stat. 1981, ch. 48, par. 60.) Under the rule of statutory construction of *noscitur a sociis*, "when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word." (2A Sutherland, Statutory Construction sec. 47.16, at 161 (4th ed. rev. 1984); see *Jarecki v. G.D. Searle & Co.* (1961), 367 U.S. 303, 307, 6 L. Ed. 2d 859, 863, 81 S. Ct. 1579, 1582 ("a word is known by the company it keeps"); *People v. Goldman* (1972), 7 Ill. App. 3d 253, 255, 287 N.E.2d 177.) We therefore interpret "support" in its narrower sense such that it is similar in function to the other devices with which it is listed under the Act. In our view, the common characteristic of each of the enumerated structures is to serve as a temporary platform which elevates workers or materials from the permanent floor or ground level in order to perform or accommodate performance of a construction task; the concomitant increased hazard of each is the greater likelihood that workers or materials will fall off of or through the structure more easily, causing personal injuries. Thus, in *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, for example, the court held that metal girders which formed a permanent part of the building under construction but which were used by the plaintiff worker as a form of temporary support were governed by the Act. In reaching this result, the court quoted

with approval (39 Ill. 2d 445, 450) the following passage from the decision of the Wisconsin Supreme Court in *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 314-15, 139 N.W. 179, 184:

> "Much that has been said respecting 'repairing' applies to 'scaffolding' and 'mechanical contrivance.' The scope thereof would reasonably include any temporary structure made up of parts, viewing the term in its broadest scope, used for support while doing any kind of work mentioned in the law, — any kind of an elevated platform for workmen to use in the performance of their duties. Any combination for use in doing any kind of work mentioned in the statute where the servant is dependable thereon for support, in place of an ordinary surface, such as the ground or floor, is a mechanical contrivance. The legislature, in the combination of words, 'scaffolding, hoists, stays, ladders or other mechanical contrivance,' viewed in a broad remedial sense in favor of employees, left little, if anything, uncovered which may be used in the work mentioned, where required to be done beyond the reach of one standing on an ordinary surface."

Similarly, in *Frick v. O'Hare-Chicago Corp.* (1966), 70 Ill. App. 2d 303, 217 N.E.2d 552, the court concluded that a plank upon which the plaintiff worker stood in order to perform assigned construction work and from which he fell was a scaffold, because the plank was several inches high and rested upon boards in a parallel manner which had been placed upon a 14-foot concrete form. More recently, in *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E.2d 1011, the court determined that a plank across which the plaintiff worker walked and from which he fell while delivering equipment to the jobsite was a support, because it was placed above an area of mud several feet deep. In contrast to these cases, however, courts have concluded that a completed concrete floor area designed for machine equipment was not a scaffold where the plaintiff's injuries resulted from a fall upon the concrete floor while in the act of moving machinery piping from one area of the floor to another (*Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878), and that a concrete floor was not a scaffold where the plaintiff, while walking across the completed floor area, fell through an opening therein. *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607; *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011.

■ As these cases demonstrate, courts have looked to three factors to determine whether a structure comes within the scope of the Act: (1) the intended use of the device at the time of the injury; (2)

the connection between the injury and the hazardous nature of the device; and (3) the element of danger involved in the use of the. structure and whether it was this danger which the legislature sought to alleviate in enacting the statute. *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 297-98, 448 N.E.2d 1011.

▪ Upon consideration of these criteria, we conclude that the masonite covering here was not a support under section 1. The masonite did not serve as a working platform about the terra-cotta floor, nor was it intended for this purpose. Instead, it was meant only to protect the finished flooring. Moreover, the hazard of the masonite covering was not that workers would fall off of or through it more easily, but rather that at most they might fall on it, as did Page. Although falling onto masonite floor covering might involve some harm, as Page's injuries demonstrate, such is not the ultrahazardous risk against which the Act seeks to protect.

▪ Page attempts to distinguish the facts presented here from those in *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, and *Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d 1011. In both *Quinn* and *Tenenbaum* the courts concluded that based on the facts presented there, the floors upon which the plaintiffs fell and sustained injuries were not scaffolds or supports under the Structural Work Act. Page suggests that *Quinn* and *Tenenbaum* are distinguishable because the floors there were completed and left in the form in which they had been designed, while the terra-cotta floor here, although completed, was not left in its finished form but was instead covered with masonite sheets. We find this distinction of no significance, however, as the record establishes that the purpose of the masonite was to serve as a surface floor which protected the terra-cotta directly underneath. "Where, as here, nothing distinguishes a completed floor [and its protective covering] from any other floor as that term is commonly used and understood, but for the fact that a workman chose to stand on it [or walk across it], it is not, as a matter of law, a scaffold [or a support]." *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 972, 464 N.E.2d 1239.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.