NORMAN HARPER, Plaintiff-Appellant, v. SCHAL ASSOCIATES, INC., Defendant-Appellee (Skidmore Owings & Merrill *et al.*, Defendants).

First District (3rd Division)   No. 84—2033

Opinion filed June 24, 1987.

Robert M. Salzman and Jeffrey A. Rabin, both of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Francis R. Petrek, Jr., and Jane Zimmerman, counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Norman Harper, appeals from the entry of summary judgment in favor of defendant, Schal Associates, Inc., in an action brought pursuant to the Structural Work Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). We affirm.

On June 12, 1979, plaintiff was employed as an architectural ironworker by Architectural Structures, Inc., to perform work at a construction site in Chicago, Illinois. On the construction site was a partially erected building. The unfinished space to the west of the building consisted of dry, packed earth composed of backfill and gravel. This

area covered approximately 25 feet in a westerly direction and 50 feet in a north-south direction. The west edge of the site was bordered by a fence adjacent to the street. Approximately one to two feet west of the building's foundation, a bulkhead had been placed in the ground.[1]

On the day in question, plaintiff was using a welding cable on the mezzanine level of the structure. The cable was roughly 150 feet long and weighed 250 pounds. After completing his work, it was necessary for plaintiff to straighten out the cable prior to recoiling it and placing it back in his truck. To accomplish this task, plaintiff disengaged the cable from the mezzanine level and let it drop to the main floor of the building. Plaintiff then took one end of the cable and began dragging it out from the building toward the west perimeter of the construction site. As plaintiff walked backward dragging the cable, he stepped over the bulkhead and continued walking backward toward the fence. Plaintiff then tripped in a depression in the ground on the western side of the bulkhead and fell, sustaining injuries. The depression in which plaintiff tripped measured approximately 16 inches wide by 24 inches long.

Plaintiff subsequently filed a two-count complaint in the circuit court. In count I, plaintiff alleged a violation of the Act. Count II of plaintiff's complaint sounded in negligence. Defendant moved for partial summary judgment with respect to count I. Both parties filed memoranda pertaining to defendant's motion. Following oral argument, the trial court entered summary judgment in defendant's favor on the ground that the Act was inapplicable. Defendant appeals.

■ The sole issue presently before us is whether the failure to provide planking over the depressions which existed in the western area of the construction site where plaintiff tripped is actionable under the Act.

Section one of the Act provides:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any

---

[1]The bulkhead consisted of a corrugated sheet of metal driven into the ground to prevent earth from spilling back into the excavated area where the building was being erected.

person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1985, ch. 48, par. 60.

In reviewing a trial court's entry of summary judgment in a Structural Work Act case, we must determine whether the circuit court was correct in deciding that no genuine issue of material fact was raised and that the entry of summary judgment was correct as a matter of law. "It is well settled that summary judgment is appropriate where the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421.

The purpose of the Act is to protect workers engaged in the extrahazardous occupations involved in working in and around construction, repairing, alteration or removal of buildings, bridges, viaducts and other structures. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422.) While the Act should be liberally construed, it was never intended to be applied to all construction-related activities or to all injuries which occur at or in proximity to a construction site. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422.) Rather, inquiry should focus with particularity on the special circumstance surrounding each injury-causing accident. *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 295-96, 448 N.E.2d 1011, 1013.

To state a cause of action under the Act, the following elements must be present: (1) the device involved must be one listed in the Act, (2) the device involved must be used to complete construction of a building or other structure within the Act, (3) the device must be unsafe, or not safely placed or operated (or there must be a failure to provide such a device), (4) those charged with the work must have wilfully violated the Act and (5) plaintiff's injury must be proximately caused by defendant's violation of the Act. *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 296, 448 N.E.2d 1011, 1013; Ring, *The Scaffold Act: Its Past, Present and Future*, 64 Ill. B.J. 666, 670 (1976).

The ultimate resolution of the issue presently before us involves the third element, whether there was a failure to provide planking or boards in the area of the construction site where plaintiff was injured. However, in order to determine whether defendant failed to provide a proper support over the area of the construction site, we must first establish if planking or boards covering this area would be

appropriately classified as a device listed in the Act, specifically a support. (See *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 157, 479 N.E.2d 1007, 1009.) Such a determination is a matter of statutory construction and is therefore a question of law to be decided by the trier of fact. *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 58, 475 N.E.2d 571, 572.

Plaintiff relies on the case of *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 479 N.E.2d 1007, to buttress his argument that planking covering the ground constitutes support within the meaning of the Act. Plaintiff also relies on *Rambert* to substantiate his contention that defendant's failure to provide planking over the depressions which existed in the relevant area of the construction site is actionable under the Act. In *Rambert*, the plaintiff and another worker were installing external siding on the wall of a heliport. The plaintiff was working at ground level. Plaintiff and his partner had walked over to pick up a piece of corrugated steel for installation. With plaintiff walking backwards, plaintiff and his partner made their way back to the portion of the wall where the metal was to be installed. As plaintiff was walking backwards, he stepped into a hole created by a 55-gallon drum buried in the ground with its rim flush with the surface of the ground. The *Rambert* court, relying upon a three-prong analysis outlined and utilized in the case of *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E.2d 1011, determined that a plank or board covering the hole created by the buried drum should be treated as a support for purposes of the Act. *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 158, 479 N.E.2d 1007, 1009.

In *Ashley*, the ground surrounding a construction site was extremely muddy. To prevent workers from sinking into the mud as they walked to the building, planks were laid out as walkways. As the plaintiff was walking on one of the planks, it slipped out from under him and caused him to fall. The *Ashley* court determined that the planks used as temporary walkways were supports within the meaning of the Act. (*Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 298, 448 N.E.2d 1011, 1014.) The court specifically stated:

> "[I]t is our opinion that as a result of the unusually muddy conditions, planks and concrete forms were erected as supports specifically intended to prevent workmen and their materials from sinking into the mud. In so finding, we emphasize that our decision is premised on the particular ground conditions which existed at the time of plaintiff's injury." 114 Ill. App. 3d

293, 298, 448 N.E.2d 1011, 1014.

■■ In arriving at its decision that the planks used as temporary walkways were supports within the meaning of section 1 of the Act, the *Ashley* court utilized a three-prong analysis developed by courts of review to determine the intended scope of the undefined terms set forth in section 1. This analysis was subsequently adopted by the *Rambert* court. According to both the *Ashley* and *Rambert* courts, to determine whether a device comes within the meaning of the Act, a court must ascertain (1) the intended use of the device in question at the time of the injury, (2) whether the injury has some connection with the hazardous nature of the device in question and (3) the element of danger involved in the use of the support device and whether this is the type of danger the legislature intended to alleviate by the Act. (*Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 159, 479 N.E.2d 1009, 1010-12; *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 296-98, 448 N.E.2d 1011, 1014-15.) Applying the three-prong analysis utilized in *Ashley* and *Rambert* to the present case, we conclude that planking or boards covering the depressions in the ground area of the construction site where plaintiff was injured should not be treated as supports for purposes of the Act.

The first prong of the *Ashley* analysis focuses on the intended use of the device at the time of the injury-causing accident. Defendant argues that the planks, if present, would only be intended as a safety feature, such as a walkway, and not as a working platform. Defendant further argues that neither the ground nor a floor-like structure is covered under the Act as a support when they are being used as a walkway. Rather, defendant contends, it is only when a worker relies on such a structure as a working platform that the worker may recover. See *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422-23.

We have previously emphasized that the Act was designed to protect persons engaged in the extrahazardous occupations of working in and around construction sites, but was never intended to cover all construction activity. Here, even if planking had been present, its intended use would only have been to provide a flat surface over the depressions, ruts and rises of the ground inherent in all construction sites. The evidence shows that the area in question was not generally being used by plaintiff as a working area. Rather, it was utilized as an access route to construction vehicles and other vehicles parked on the street adjoining the site. At the time of his injury, plaintiff was walking backward uncoiling a cable. Given these circumstances, we do not believe that plaintiff was engaged in either a hazardous or extra-

hazardous activity. We therefore do not believe that even if the construction area at issue here had planking over the depressions, ruts and uneven ground areas, such planking would have been intended as a support within the meaning of the Act. See *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 423.

The second prong of the *Ashley* analysis focuses on whether there was a connection between the injury and the hazardous nature of the device in question. Initially, we emphasize that there is nothing inherently hazardous about planking placed on the ground. Unlike the factual situations at issue in *Ashley* and *Rambert*, any planking present here would not have been "imbued with the hazardous possibility of a person falling through the plank into the *** [depression] below, similar to the hazard presented when a worker traverses a scaffold erected above ground." (*Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 160, 479 N.E.2d 1009, 1011.) Rather, the possibility of falling off planking on the ground into a depression in the ground, as opposed to a substantial hole such as was present in *Rambert*, is not only remote, but likewise not generally recognized as a hazardous possibility. Here, unlike the extremely muddy conditions of *Ashley* or the 55-gallon drum buried in the ground in *Rambert*, plaintiff tripped in a ground depression at a construction site consisting of dry, packed earth. We do not believe that a hazardous situation was created by the absence of planking as supports in this situation. We, therefore, find no connection between plaintiff's injury and the failure to provide planking over the construction site. Moreover, were we to adopt plaintiff's reasoning, all construction sites which consist of uneven ground containing depressions and ruts would be required to have a floor-like structure over the ground to protect workers from tripping. We decline to espouse such a result.

The final aspect of the *Ashley* analysis questions whether the danger involved was intended to be covered by the Act. It is clear that the purpose of the Act is to protect workers engaged in extrahazardous activities or occupations from certain risks inherent in the nature of their jobs. It is undisputed that plaintiff needed to straighten out the cable he was working with prior to recoiling it and loading it back onto the truck. The only inquiry that should be made is whether the danger involved in this particular situation, tripping in a depression in the ground, is the type of activity intended to be covered by the Act. We do not believe that it is.

■ The depressions, ruts and uneven ground conditions present at the construction site where plaintiff was injured were the result of the normal activity which occurs at such a site due to the inherent

nature of the construction process. They were not specifically placed on the site as a result of some distinctive construction plan as was the hole at issue in *Rambert*. Nor were the ground conditions present here comparable to the quicksand-like conditions at issue in the *Ashley* case. Rather, plaintiff, albeit unfortunately, tripped in a depression in the ground while walking backward. Given the purpose of the Act, we do not believe that the danger of tripping in such a depression is the type of danger intended to be covered by the Act. For the foregoing reasons, we find that there are no genuine issues as to any material fact in regard to count I of plaintiff's complaint in which plaintiff alleges a violation of the Structural Work Act and that defendant was entitled to judgment in its favor on this count as a matter of law.

Accordingly, the order of the trial court granting partial summary judgment for defendant on count I of plaintiff's complaint is affirmed.

Affirmed.

McNAMARA, P.J., and WHITE, J., concur.