VITO V. CARNEVALE, Plaintiff-Appellant, v. INLAND RYERSON BUILDING SYSTEMS, Defendant-Appellee.

First District (2nd Division)   No. 87—2309

Opinion filed April 29, 1988.

Joseph R. Curcio, Ltd., of Chicago, for appellant.

O'Connor & Schiff, of Chicago (Elliot R. Schiff and Loretta M. Griffin, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Vito Carnevale (Carnevale), appeals the trial court's order granting defendant's summary judgment motion as to count I of Carnevale's third amended complaint. Count I of Carnevale's third amended complaint alleges that defendant, Inland Ryerson Building Systems, a division of INRYCO, Inc. (Inland), is liable under the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*) for injuries that Carnevale sustained when he fell upon bar joists which he was attempting to cross through and over while carrying lengths of plumbing piping.

Carnevale, a full journeyman plumber, was working for Austin Mechanical Contractors (Austin) in January 1982. On January 5, 1982, Carnevale was working on a Bedford Park post office. Carnevale was doing water piping—running pipes to water fixtures, water coolers, sinks, and toilets.

Carnevale noticed that the south doorway that he was instructed

to use to enter the building was blocked. Two pieces of structural steel, otherwise known as bar joists, were lying on the ground parallel to the south edge of the post office building. The bar joists, approximately 30 to 50 feet in length and 30 inches in width, were stacked upon one another in a scissors-like configuration resulting in a height of about 12 inches.

On several occasions, Carnevale complained to his superiors, Vic Macy, Dave Ennes, and Jerry Dell, that the bar joists created a hazardous condition, making it awkward for workers to try to get over the joists and step between them in order to use the south entranceway to the post office building. Carnevale also noted that the ground beneath the joists was uneven. Carnevale's complaints were to no avail.

For this particular project, Carnevale was required to lift and carry pipe into the post office building. Shortly after beginning work on January 5, 1982, Carnevale proceeded to the material trailer to get two or three pieces of pipe. Carnevale placed the pipe on his shoulder and started walking toward the post office building. When he neared the south entranceway, Carnevale stepped over the first bar joist with his left foot, and began to follow with his right foot. Carnevale felt that he was losing his balance. Afraid that the pipes were going to impale him as he fell, Carnevale threw the pipes off his shoulder and fell forward, hitting both of his knees. At the time of Carnevale's fall, parts of the terrain were snowy and icy.

Carnevale attempted to work the rest of the day, but his right leg began dragging and he began to feel twinges of pain in his left leg. Carnevale then took a few days off from work. Upon returning to work, Carnevale's leg pains worsened and he worked for only two more weeks.

Carnevale filed suit against Inland and, in count I of his third amended complaint, alleged that Inland, as the general contractor at the construction site, violated the Act and was thus liable for the injuries that he had sustained.

Inland moved for summary judgment as to count I. At the summary judgment hearing, the trial court determined that there were no disputed questions of fact. In addition, the trial court stated that it would base its decision on the facts that Carnevale set forth in his deposition testimony. The trial court then gave a brief summary of the facts according to Carnevale and proceeded to discuss the legal issues. The trial court granted Inland's motion for summary judgment. Carnevale appeals.

Carnevale contends that Inland violated the Act when it failed to

provide a support (stairs or a ramp) over the bar joists, thus making it an unsafe place for Carnevale to work. In essence, Inland responds that the Act is not applicable to the case at bar because none of the support devices enumerated in the Act are involved here. Thus, the issue for review becomes whether Inland's failure to provide stairs or a ramp over the bar joists gives Carnevale a cause of action under the Act.

In pertinent part, the Act provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1981, ch. 48, par. 60.

■ In assessing whether the trial court properly granted a party's summary judgment motion, a reviewing court must decide whether the trial court was correct in finding that no genuine issue of material fact was raised and, if none was raised, whether, as a matter of law, entry of the judgment was proper. (*Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 157, 479 N.E.2d 1007, *appeal denied* (1985), 108 Ill. 2d 586.) A trial court should enter summary judgment only where the evidence, when construed most strongly against the moving party, clearly establishes that the moving party should prevail as a matter of law. *Rambert*, 134 Ill. App. 3d at 157-58.

■ Since the facts surrounding Carnevale's fall are undisputed in this case, we next must decide whether any stairs or a ramp laid over the bar joists would properly be classified as a support. Whether stairs or a ramp constitute a support under the Act is a matter of statutory construction that becomes a question of law. *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223; *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, 545-46, 510 N.E.2d 1061.

■ The purpose of the Act is to protect persons engaged in extrahazardous occupations that involve the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other struc-

tures. (*Vuletich*, 117 Ill. 2d at 421-22.) Although the Act is to be liberally construed, it was not intended to cover any and all construction activities. (*Vuletich*, 117 Ill. 2d at 421-22.) Therefore, not all devices have been held to be supports within the meaning of the Act. *Vuletich*, 117 Ill. 2d at 422.

The failure to provide a scaffold, stays, or supports can be the basis for a cause of action under the Act. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 448-49, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296; see also *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, 510 N.E.2d 1061; *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 356, 484 N.E.2d 542; *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 479 N.E.2d 1007; *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E.2d 1011, *appeal dismissed* (1983), 96 Ill. 2d 537.) In *Ashley*, plaintiff was involved in the construction of an office building complex. At that time, the ground at the construction site was ungraded and covered in deep mud. Since no vehicles could make deliveries directly to the buildings under construction, workmen had to carry the materials and equipment to wherever they were needed. To prevent the workmen from sinking in the mud, planks and concrete forms were set up as walkways. While on one of these plank walkways, plaintiff, carrying a 200-pound propane tank, fell when the plank beneath him slipped out from under his feet.

Plaintiff sustained injuries and filed a two-count complaint against defendants. Count I alleged that defendants had violated the Act. Defendants' motion to dismiss count I of the complaint was granted. Plaintiff appealed. The sole issue before the *Ashley* court was whether the planks and concrete forms erected as walkways constituted supports under the Act.

■ The *Ashley* court set forth a three-prong test to determine whether a specific device constitutes a support under the Act. The three-prong analysis asks the following questions.

First, what was the intended use of the device in question at the time of injury? If the device was employed as a necessary support in the performance of the worker's task, the first prong of the test is satisfied. *Ashley*, 114 Ill. App. 3d at 297.

Second, did the injury have some connection with the hazardous nature of the device in question? If the injury had some connection with the hazardous nature of the device, then the second prong of the test is satisfied. (See, *e.g.*, *Tenebaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607; *Quinn v. L. B. C., Inc.* (1981), 94 Ill. App. 3d

660, 418 N.E.2d 1011, *appeal denied* (1981), 85 Ill. 2d 575.) In *Tenebaum*, plaintiff was inspecting a building under construction when he tripped, fell against a ladder, and then fell through an open, unbarricaded chamber. The court held that neither the floor nor the ladder constituted a support under the Act. First, the floor was not being used as a working platform or for the purpose of completing construction work. Next, the *Tenebaum* court noted that despite the fact that a ladder is specifically listed as a device under the Act, its use in that situation took it out of the scope of the Act. In that instance, plaintiff did not fall off the ladder but fell against it. Therefore, the hazardous nature of the ladder was not the cause of plaintiff's injury. In *Quinn*, plaintiff, while inspecting a building under construction, tripped over debris, fell, and hit himself on a steel column. The court in *Quinn* held that the unfinished nature of the floor had no connection with plaintiff's injury.

Third, was the element of danger involved in the use of the support device the type of danger that the legislature intended to alleviate when it adopted the Act? If the legislature did intend to alleviate such danger, the final prong of *Ashley* is met. (See, *e.g., Harper v. Schal Associates, Inc.*, 159 Ill. App. 3d 542, 510 N.E.2d 1061.) In *Harper*, plaintiff tripped in a depression in the ground and alleged that defendant should have provided some type of support over the depression. The court held that tripping in a depression in the ground was not the type of danger that the Act was intended to alleviate.

In the case at bar, the sole issue is whether Inland's failure to provide a support (stairs or a ramp) over the bar joists constitutes a cause of action under the Act. To answer this question, the issue becomes whether stairs or a ramp would qualify as a support under the Act. It is at this point that we apply the three-prong test of *Ashley* to the facts of the instant case.

First, we do not find that the ramp or stairs used to cover the bar joists could be treated as a support for purposes of the Act. If the ramp or stairs had been present, their intended use would only have been to provide a smooth or regular surface over the bar joists. Carnevale would have used this surface as an access route rather than a working area.

Second, the grounds surrounding construction sites are generally uneven and cluttered. It would be unreasonable to expect all construction sites to have a floorlike structure erected over the entire ground area to prevent workers from tripping. Thus, we do not find that the absence of a ramp or stairs created a hazardous situation for Carnevale.

Third, we do not find that the type of activity that Carnevale was involved in (transporting pipes to the building site) was activity that the Act was intended to cover. The Act was enacted to protect workers engaged in hazardous activities. We conclude that Carnevale was not engaged in such a hazardous activity when he sustained his injuries.

Thus, we find that Carnevale does not meet the three-prong *Ashley* test and therefore does not have a cause of action under the Act. In reaching our conclusion, we have relied on the following cases: *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, and *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930, 355 N.E.2d 164.

In *Vuletich*, the court found that the stairway that plaintiff used to return his working materials was not a support within the meaning of the Act. (*Vuletich*, 117 Ill. 2d at 425.) In *Vuletich*, plaintiff, a laborer, was assigned to clean and repair a furnace located at a steel plant. After cleaning the furnace area for a period of time, plaintiff walked to the tool storage trailer to return the shovel and broom that he had been using. In order to leave the tool storage trailer, plaintiff had to descend an outdoor stairway. The stairs were covered with ice and snow and plaintiff slipped and fell down the stairway.

Plaintiff stated that the presence of the snow and ice on the stairway was partly responsible for his fall. Plaintiff filed a complaint against defendant, seeking recovery under the Act. In holding that the stairway in question did not constitute a support under the Act, the trial court granted defendant's motion for summary judgment.

The appellate court reversed. The Illinois Supreme Court granted defendant's petition for leave to appeal, reversed the appellate court, and affirmed the trial court. (*Vuletich*, 117 Ill. 2d at 420, 425.) The court continued that at the time of plaintiff's injury, plaintiff was not engaged in any type of hazardous work activity. Rather, plaintiff was simply returning his broom and shovel to the trailer. Recognizing that all stairs are used to elevate people from one level to another, the court cautioned that the presence of stairs cannot transform a nonhazardous activity into a hazardous activity that then falls within the purview of the Act. (*Vuletich*, 117 Ill. 2d at 424.) Like the plaintiff in *Vuletich*, Carnevale was not engaged in any type of hazardous activity at the time of his injury. He was simply transporting supplies to the work site.

In *Harper*, plaintiff, an architectural ironworker, was working at the construction site of a partially erected building. The open area to

the west of the building consisted of dry, packed earth composed of backfill and gravel. In the course of his work, it was necessary for plaintiff to straighten a portion of welding cable. Thus, plaintiff, dragging the cable, walked backward into the open area to the west of the building. While plaintiff was walking backward, he tripped in a depression in the ground that was about 16 inches wide and 24 inches long. *Harper*, 159 Ill. App. 3d at 543-44.

Plaintiff sustained injuries and filed a two-count complaint. Count I alleged violation of the Act. The trial court granted defendant's motion for summary judgment as to count I, holding that the Act was inapplicable. Plaintiff appealed.

The sole issue before the *Harper* court was whether defendant's failure to provide planking over the depressions in the ground was actionable under the Act. The court first noted that to "state a cause of action under the Act, the following elements must be present: (1) the device involved must be one listed in the Act, (2) the device involved must be used to complete construction of a building or other structure within the Act, (3) the device must be unsafe, or not safely placed or operated (or there must be a failure to provide such a device), (4) those charged with the work must have wilfully violated the Act, and (5) plaintiff's injury must be proximately caused by defendant's violation of the Act." *Harper*, 159 Ill. App. 3d at 545.

The court continued that resolution of the issue involved the third element, whether defendant failed to provide planking or boards in the area of the construction site where plaintiff sustained injuries. In order to properly answer the issue before it, the court noted that it had to first determine whether planking or boards covering the area could be classified as a device under the Act, specifically a support. *Harper*, 159 Ill. App. 3d at 545-46.

Applying the three-prong analysis set forth in *Ashley*, the *Harper* court concluded that planking or boards covering the depressions should not be treated as supports for purposes of the Act. (*Harper*, 159 Ill. App. 3d at 547.) In addressing the first prong of *Ashley*, the *Harper* court reasoned that if planking had been present, its intended use would only have been to provide a flat surface (over the depressions) that would have been utilized as an access route rather than a working area. Further, the court noted that plaintiff was not engaged in a hazardous or extrahazardous activity while he was walking backward to uncoil the cable.

In connection with the second prong, the court stated that it did not believe that a hazardous situation was created by the absence of the planking. Additionally, the court noted that if it were to adopt

plaintiff's reasoning, "all construction sites which consist of uneven ground containing depressions and ruts would be required to have a floor-like structure over the ground to protect workers from tripping." (*Harper*, 159 Ill. App. 3d at 548.) As to the final prong of *Ashley*, the court found that the danger involved (tripping in a depression in the ground) was not the type of danger that the Act was meant to alleviate. (*Harper*, 159 Ill. App. 3d at 548.) Thus, the *Harper* court affirmed the trial court's entry of summary judgment in favor of defendant. As in *Harper*, the facts in the instant case reveal that Carnevale was injured while he was using an access route rather than a working area. In addition, Carnevale's injury did not occur while he was involved in a hazardous activity.

In *Swendsen*, plaintiff was engaged in stacking pilings on shore after they had been pulled out of the river. A crane was used to lift each piling from a barge to the shore. After guiding a piling into place on top of the stack, plaintiff unhooked one end and proceeded to walk along the piling to reach the other end. Plaintiff fell into a ditch and sustained injuries when either the piling moved or plaintiff's foot slipped on some wet mud. Plaintiff sued defendants and alleged violation of the Act. The trial court granted defendants' summary judgment motion and plaintiff appealed.

Plaintiff claimed that the pilings were stays or supports used in the erection of a bridge and that their removal from the river was necessary to the erection of the bridge. Plaintiff thus concluded that when he was working on the pilings he was within the scope of the Act. The appellate court held that the "plain language of the Act cannot be interpreted to cover the unloading of dismantled piling materials." *Swendsen*, 41 Ill. App. 3d at 933.

In view of the foregoing, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.