ROBERT E. SMITH, Plaintiff-Appellant, v. THE EXCELLO PRESS, INC., Defendant-Appellee.

First District (2nd Division) No. 87—1610

Opinion filed May 10, 1988.—Rehearing denied June 16, 1988.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.

Edward L. Osowski, of Chicago, for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellee.

JUSTICE STAMOS* delivered the opinion of the court:

Plaintiff, Robert E. Smith, appeals pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) from the summary judgment for defendant, The Excello Press, Inc. (Excello), an Illinois corporation, as to count I of his complaint. Count I alleged liability in tort under the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*) for injuries to plaintiff from a fall on defendant's premises.

The issue is whether the circuit court properly entered summary judgment for Excello on the ground that "the activity involved in this case does not fall within the [Act]."

Plaintiff contends that, on a liberal interpretation of the totality of facts and circumstances of his activity and his injury, he was a member of the class protected by the Act and was engaged in activity covered by the Act; that his activity when injured was an integral part of construction activity; and that his unloading activity, Excello's placement of and failure to provide support for materials, and Excello's placement and use of a scaffold all bring this cause within the Act.

Excello contends that summary judgment was properly ordered because there was no genuine issue of material fact as to whether the floor on which plaintiff was walking was a scaffold under the Act; that plaintiff was not engaged in unloading when injured; that the Act does not require supports for materials rather than persons; that plaintiff waived his argument as to the totality of circumstances by failure to raise it in the trial court; and that in any event a totality-of-circumstances test properly applies only to determining who has charge of a work site under the Act, not to determining whether a worker's activity is protected by the Act.

## FACTS

Viewing the pleadings, testimony, and evidence most favorably to plaintiff, the record discloses the following: On January 5, 1983, plaintiff was employed by Reliable Refrigeration and Air Conditioning Corporation (Reliable) as a pipefitter, connecting and hanging pipes at Excello's premises in Elk Grove Village. Excello was in charge of placing, erecting, constructing, and maintaining the premises, piping, and piping hangers.

Excello's chilling water system included an extensive network of piping that ran from printing equipment upward toward the ceiling

---

*This opinion was prepared and concurred in prior to the resignation of Justice Stamos from the court.

and outside to a cooling tower. The cooling tower was a large, boxy assembly adjacent to the upper part of an exterior wall. Reliable billed Excello at least $397,000 for its piping and other work; the contract price of $339,555 was to cover very extensive construction of stands, placement of machinery, and installation of water, air, and gas piping systems.

Plaintiff was a pipefitter, and his job at Excello's premises pertained to all the piping that would be involved with the printing presses being installed there. Most of the pipe he installed was overhead. The building was already constructed when he began work there, but no printing presses were yet installed.

On the accident date, he and co-workers had been installing pipe near the ceiling. At the time, there were three presses in the plant. The accident occurred at about 2 p.m., and from about 1:45 p.m. he and his co-workers had been unloading steel pipe from a truck at his foreman's direction.

Immediately before the accident, plaintiff and a co-worker were carrying 2½-inch pipe weighing 160 to 180 pounds directly from the truck to the lowered scaffold, because it would have been the next pipe installed, as 2½-inch pipe was being worked on when the truck arrived.

The scaffold was an electrically powered hydraulic scaffold of scissors type. The accident happened just west and maybe a few feet north of the scaffold.

As plaintiff and his co-worker approached the scaffold, they were carrying the pipe on their shoulders, the co-worker being in front. At this time, workers setting up a press were performing a trial run. Just as the co-worker walked by the press, a jam occurred, paper built up at the end of the press, and the Excello pressman started taking paper off the end and throwing it across the aisle. The paper was glossy and in sheets of perhaps three feet by three feet. Plaintiff was perhaps five feet from the press when he noticed the pressman throwing handfuls of paper out.

As the papers reached the floor, plaintiff slid on them; his left leg went out; papers covered several pieces of all-thread rod that were lying nearby; the rod rolled when plaintiff's foot made contact with it; and plaintiff suffered injury. All-thread rod is used for installing pipe hangers and hanging pipe. Although the paper covered the rod, the rod was certainly there because Reliable's band saw was there, and the rod consisted of cutoffs that were used for hangers and that had been cut by the saw. There was a pile for the all-thread rod beside the saw, but he did not trip on the pile of rod itself. After recovering his

footing, plaintiff and the co-worker continued with the pipe to the scaffold.

At this point in plaintiff's deposition, the following exchange occurred:

"Q. [attorney for Excello]: To the best of your knowledge did the presence of the scaffold itself have anything to do with your slip and fall?

A. No.

Q. Was the press that this paper came out of the one you were going to put pipe over?

A. We were just beyond that press."

Excello's motion for summary judgment contended as follows: The floor on which plaintiff was walking when he slipped was not a platform or structure in terms of the Act. Although plaintiff alleged that he was passing by rather than on a mechanical contrivance, he did not allege or testify that he was injured by any object falling from a device covered by the Act. Courts have consistently rejected claims under the Act for slips and falls on completed floors not used as working platforms. To find that the floor on which plaintiff was walking was a scaffold or support device would be to encompass a hazard extremely remote from the dangers contemplated when the Act was adopted, and such a finding would be unwarranted where the hazard was unrelated to the dangers associated with scaffolds or supports and the plaintiff is free to pursue other theories of recovery. There was no genuine issue of material fact as to the use of the completed floor by plaintiff, and Excello was entitled to summary judgment in its favor as to plaintiff's count I, which was filed under the Act.

Plaintiff filed a lengthy response to Excello's summary judgment motion, concluding that plaintiff's walking on a floor when injured was not determinative of whether he was injured as a result of a Structural Work Act activity and that no case cited by Excello either involved an unloading operation that was an integral part of installing the materials being unloaded or involved supports or their placement that caused injury as allegedly in the case at bar.

In an affidavit attached to his response, plaintiff's counsel stated that he expected future discovery to reveal evidence that would establish that the unloading operation being conducted by plaintiff was an integral part of installing the piping; that he would introduce testimony as to Excello's violation of codes and standards in the type of construction in which plaintiff was engaged; and that the codes and standards would establish that housekeeping, storage of materials, clearing of aisles, and stacking of materials in aisles are an integral

part of the construction engaged in by plaintiff.

During oral argument in the trial court, Excello's counsel also contended that the case does not involve a violation of the Act because the building in which plaintiff was working had been "completed for years."

At the conclusion of oral argument, the following brief proceedings occurred:

> "THE COURT: Gentlemen and lady, I am of the opinion that the activity involved in this case does not fall within the Structural [Work] Act. The motion for summary judgment as to Count I is granted, and your motion to dismiss that third-party complaint is likewise granted.
>
> MS. SEIWERT [counsel for Reliable]: Thank you, your Honor.
>
> MR. TRAINOR [counsel for Excello]: The motion to dismiss only Count I of the complaint?
>
> THE COURT: The one having to deal with the Structural Work Act.
>
> MR. OSOWSKI [counsel for plaintiff]: Are you going to make that final and appealable?
>
> THE COURT: Yes."

The court's written order of April 14, 1987, granted Excello's summary judgment motion as to plaintiff's count I and included an express finding that there is no just reason to delay enforcement or appeal as to plaintiff's count I. This timely appeal followed.

OPINION

■■■ Summary judgment is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the party's right thereto. (*Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 157-58, 479 N.E.2d 1007, 1009, *appeal denied* (1985), 108 Ill. 2d 586.) Upon review of the trial court's entry of summary judgment, this court must determine whether the lower court correctly ruled that no genuine issue of material fact was raised and, if none was raised, whether entry of the judgment was correct as a matter of law. (*Rambert*, 134 Ill. App. 3d at 157, 479 N.E.2d at 1009.) Even though a complaint and answer may purport to raise material factual issues, summary judgment is appropriate if the issues are not further supported by evidentiary facts or affidavits. (*Miller v. Verson Allsteel Press Co.* (1984), 126 Ill. App. 3d 935, 938, 467 N.E.2d 983, 986; *Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 1139, 401 N.E.2d 1287, 1289.)

And when the pleadings, depositions, and affidavits fail to establish an element of the plaintiff's cause of action, summary judgment is proper. *Brunsfeld v. Mineola Hotel & Restaurant, Inc.* (1983), 119 Ill. App. 3d 337, 341, 456 N.E.2d 361, 365.

■ The elements of a cause of action under the Act are: (1) the device involved must be included in the Act; (2) the device involved must be used in the construction of a building or "other structure" within the Act; (3) the device must be unsafe, or not safely placed or operated; (4) the defendants in charge of the work must have willfully violated the Act; and (5) the plaintiff's injury must be proximately caused by the defendants' violation. *Ryan v. E. A. I. Construction Corp.* (1987), 158 Ill. App. 3d 449, 457, 511 N.E.2d 1244, 1249.

In the present case, plaintiff does not contend that the floor was a support in terms of the Act. Had he done so, all the cases cited by Excello on such a point might be apposite. Rather, plaintiff contends that the scaffold was a scaffold and that, as such, it must, in the Act's words, have been "so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same." Ill. Rev. Stat. 1981, ch. 48, par. 60.

Excello's motion argued only the question whether the floor could be considered a support for plaintiff in terms of the Act and the question of plaintiff's failure to allege that he was injured by any object falling from a scaffold. At oral argument in the trial court, Excello further contended, in effect, that plaintiff was not engaged in "erection, repairing, alteration, removal or painting" of a structure, since the Excello building allegedly was fully constructed before plaintiff began work. All these arguments refer to the first two elements of a cause of action under the Act: whether a device is covered by the Act, and whether it was used in structural work covered by the Act. Consequently, the trial court's otherwise unamplified ruling should be construed as having decided one or both of these two issues favorably to Excello.

■■ The question whether a certain device is governed by the Act is a matter of statutory construction and thus a question of law for the court. (*Page v. Corley Companies, Inc.* (1985), 131 Ill. App. 3d 56, 58, 475 N.E.2d 571, 572.) As noted in *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E.2d 1011, *appeal denied* (1983), 96 Ill. 2d 537, the courts have employed a three-prong test to determine the scope of section 1 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 60). First, courts inquire into the intended use of the device in question at the time of injury. Second, courts ask whether the in-

jury has some connection with the hazardous nature of the device. Third, courts inquire into the element of danger involved in the device's use and whether this was the danger that the legislature attempted to alleviate.

In applying the first prong of the *Ashley* test to the case at bar, there could be no question, and Excello has raised none, as to whether the hydraulic scaffold here was a "scaffold" in Act terms. The device in question in the case at bar was not the floor but the scaffold, and its intended use was clearly that of a scaffold.

■ As to the second *Ashley* prong, it is barely arguable that the hazardous nature of the scaffold's inherent construction was connected with the alleged fact that plaintiff was about to place a pipe on it. In *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, a plaintiff was inspecting a cleanup operation when he dropped his flashlight, tripped, and fell. The *Tenenbaum* plaintiff was not allowed to recover under the Act for having tripped over a projecting ladder even though the ladder may be a scaffold, because he could as easily have tripped over a bench, box, or some other object. *Tenenbaum* held that "[i]t is only when an injury has some connection with the hazardous nature of [a scaffold] that a cause of action may be maintained" under the Act. *Tenenbaum*, 60 Ill. 2d at 371, 325 N.E.2d at 613.

In the instant case, the record shows that the accident occurred west and a few feet north of the scaffold. Since plaintiff was not injured on a scaffold, nor was he injured by tripping over a scaffold, the connection between his injury and the scaffold is even more tenuous than that in *Tenenbaum*.

The present case is analogous to *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 487 N.E.2d 1124. There the plaintiff was working on and around a roof deck when he was struck by a sheet of metal siding that had been caught by the wind. The court rejected the plaintiff's argument that the defendants violated the Act by failing to tie down the metal sheeting on the roof where the plaintiff was working. The court found no evidence to suggest that the roof had inadequately performed as a temporary support and held that the plaintiff's injury was caused by the gust of wind. (*Quinlin*, 139 Ill. App. 3d at 538, 487 N.E.2d at 1126.) Similarly, in the present case, the hazard that caused plaintiff's injury was not the support (the scaffold) but the sheets of glossy paper that were thrown from the press and that landed on the floor and covered several pieces of all-thread rod lying there.

*Quinn v. L. B. C., Inc.* (1981), 94 Ill. App. 3d 660, 418 N.E.2d

1011, *appeal denied* (1981), 85 Ill. 2d 575, held that a fall on an essentially completed ground floor, on which no construction was in progress and which was being used merely for ingress, egress, and storage, was not a fall on a scaffold. In addition, the plaintiff was a building inspector who, though within the class of persons covered by the Act and though engaged in construction activities, was not engaged in covered structural activities when injured. He was simply inspecting the site, and, in order to recover, his injury would have had to possess some connection with the hazardous nature of a device covered by the Act. Plaintiff in our case similarly did not fall on a scaffold, and his injury must also have had some connection with the hazardous nature of a device covered by the Act in order to establish a cause of action under the Act.

█ Since we find that the injury was not caused by the scaffold itself, the next question is whether plaintiff's injury was caused by the placement of the scaffold upon debris and is therefore covered by the Act.

In *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868, a plaintiff was injured when the ladder on which he was working fell. The ladder had been placed on a driveway covered with dirt and construction debris, including shingles, paper, wood, and bricks. The supreme court held that a jury could have inferred that, in violation of the Act, the ladder was not placed in a suitable area in order to paint. (*McInerney*, 62 Ill. 2d at 103, 338 N.E.2d at 874.) The present case can be distinguished from *McInerney* because here plaintiff was not on the scaffold, the scaffold itself did not fall, and the scaffold was not placed atop the debris. The paper on which plaintiff fell was the result of a press jam that occurred after the scaffold was already in place.

In *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, 510 N.E.2d 1061, the court concluded that planking covering depressions in the ground of a construction site should not be treated as a support under the Act. In so holding, the court rejected the notion that all construction sites consisting of uneven ground with depressions and ruts must be covered with a floorlike structure to protect workers from tripping. (*Harper*, 159 Ill. App. 3d at 548, 510 N.E.2d at 1066.) By analogy, if we accepted the reasoning that the present plaintiff's claim should be covered by the Act because he fell on debris surrounding a scaffold, we would require that, in order to meet the Act's requirements, all construction sites be constantly cleared of debris or perhaps resurfaced so as to provide an uncluttered, floorlike area to prevent workers from slipping. We similarly decline to expand

the interpretation of the Act to such an extent.

■■ The third question under *Ashley* is whether the danger involved in the device's use was a danger the legislature attempted to alleviate. In this regard, Excello contends that, even if plaintiff's duties otherwise involved activity within the Act, at the time of injury plaintiff was not engaged in any unloading activity that might enable him to rely on *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573. In *McNellis*, because of a combination of contractual provisions and the inherent nature of constructing a large power plant, the court held that plaintiff was covered by the Act when he was injured while unloading a 10-ton piece of equipment from a railroad car half a mile from the plant site. The equipment was destined to be installed in the plant.

Excello does acknowledge that unloading activity was recognized as an integral part of construction in *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 448 N.E.2d 1011, *appeal denied* (1983), 96 Ill. 2d 537, where the court looked to the plaintiff's specific function at the construction site and the site conditions in determining whether unloading was an integral part of his duties. To perform his duties as as roofer, the *Ashley* plaintiff needed materials and equipment that could not be delivered directly to him but had to be carried from the site perimeter. It was an "untenable contention" that "plaintiff was a roofer while at the building itself, and a delivery man (hence, not covered by the Act) when it became necessary for him to carry equipment from his truck to the building." *Ashley*, 114 Ill. App. 3d at 300, 448 N.E.2d at 1015.

However, Excello argues that here, the unloading activity had already been completed, and plaintiff was merely carrying the pipe across a floor as in *Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878, 473 N.E.2d 385, *appeal denied* (1985), 102 Ill. 2d 553, where the plaintiff, a pipefitter, was denied recovery under the Act for injuries sustained when he was carrying pipes across the completed floor of a power plant under construction and slipped and fell on water or ice.

Although Excello argues that in *Choi* the unloading had already been completed as supposedly was true in the case at bar, the *Choi* court reached no such conclusion. Moreover, the *Choi* plaintiff was not shown to have been proceeding to a scaffold when he fell, and he relied merely on a theory that the floor on which he trod was a platform or support in Act terms. The court rejected that theory, but the facts were not comparable to those of our case. The *Choi* plaintiff not only failed to allege use of an actual scaffold, but he failed to allege

that he was engaged in the type of elevated erection work meant to be covered by the Act. The fact that he was engaged in mere "construction" work was not sufficient, since the Act "should not be interpreted to compel coverage of every construction work injury." *Choi*, 129 Ill. App. 3d at 882, 473 N.E.2d at 387.

In *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740, 746, the court held that a plaintiff who tripped and fell over bar joists while transporting pipes to a building was not engaged in a type of activity that the Act was intended to cover. Although the present plaintiff was already in the building, he was carrying pipes to the scaffold. He was not installing the pipes or transporting equipment necessary to that task. Thus, he also was merely transporting materials to the workplace. Therefore, the holding of *Carnevale* applies, and we find that plaintiff was not engaged in a type of activity that the Act was intended to cover.

Such an activity is distinguishable from that discussed in *Ashley*. In that case, the plaintiff was carrying a 200-pound propane tank to the building where he was working. (*Ashley*, 114 Ill. App. 3d at 295, 448 N.E.2d at 1012.) For the plaintiff, a roofer, the propane tank was equipment necessary to his work. By contrast, the present plaintiff was simply transporting materials as already described. In so doing, he was using the plant floor as a mere pathway for ingress and egress, as in *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223, rather than in the performance of some hazardous activity or as a working platform (see *Vuletich*, 117 Ill. 2d at 423, 512 N.E.2d at 1225).

Plaintiff intended use of an actual scaffold and therefore met the first prong of the *Ashley* test. However, because his injury had no connection to the hazardous nature of the scaffold and because he was not engaged in the type of activity that the Act was intended to cover, he failed to meet the remaining two *Ashley* test prongs.

The only remaining controverted element arguably before the trial court was whether plaintiff was erecting, repairing, altering, removing, or painting a "structure."

Since the extensive piping work in which plaintiff was engaged required the erection adjacent to the building of large steel stands for machinery, and their connection by large and complex piping through the walls or ceiling of the building to printing presses being installed inside it, it would be unreasonable to contend that such work did not at least involve the "alteration" of Excello's building, which would be within the Act. While alteration of a structure did not include replacing storm windows with window screens on a private residence in

*Bishop v. Napier* (1965), 62 Ill. App. 2d 148, 154, 210 N.E.2d 9, 12, *appeal denied* (1965), 32 Ill. 2d 627, and stringing Christmas lights on a utility pole was not altering any character of the pole as a structure for transmitting electricity in *Long v. City of New Boston* (1982), 91 Ill. 2d 456, 467, 440 N.E.2d 625, 630, here the extensive and relatively permanent pipe and machinery installation in and on Excello's building certainly altered its appearance and potential uses substantially.

Moreover, the elaborate and relatively permanent piping and associated equipment itself would be a "structure" under the reasoning of several cases, and there is no question that plaintiff's work consisted of erecting the piping assembly. Air compressors resting on an elevated concrete platform inside an automobile dealership's building were not a "structure" in *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709, but they were merely movable through heavy pieces of equipment, and, while important to the dealership's business operations, their repair was not necessary to prevent damage to the building or platform. By contrast, in the present case the piping assembly and probably the stands could not as a matter of law be said to be movable in gross without first being dismantled, and their erection was necessary to permit Excello's desired use of the building to house its printing operations. In *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157, immovable air-conditioning equipment, installed partly within a building and partly on its roof, and whose ductwork ran throughout the building and formed an integral part thereof, was a "structure" in Act terms. The parallel with the present case is close. Though a truck-mounted drilling rig was not a "structure" in *Bullistron v. Northern Builders, Inc.* (1984), 127 Ill. App. 3d 242, 468 N.E.2d 1281, *appeal denied* (1984), 101 Ill. 2d 581, the rig was by definition mobile, and it was a tool used to construct a building's foundation rather than being part of the building itself. Compare *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318 (self-propelled but huge power shovel was not a structure) with *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946 (repair of temporary sump pump, in context of repairs to a plant of which the ash pit holding the pump was part, was repair of structure, whether pit was considered a structure by itself or an integral part of the plant).

*Kittleson v. United Parcel Service, Inc.* (1987), 162 Ill. App. 3d 966, 516 N.E.2d 350, which Excello cites as additional authority, is distinguishable. There, the court decided that an ironworker's carrying of metal noseovers intended for assembly into a conveyor system

did not constitute erection of a structure, since the building that would house the system was complete, and the mere importance of the system to a defendant's business operations was not determinative of whether the system was a structure and therefore whether plaintiff's activities were an integral part of an erection operation. In this respect, the holding was similar to that in *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709. However, in the present case, because of the piping's extent and permanency, the court should hold that it was a structure itself or an integral part of Excello's building structure or that its erection constituted an alteration of Excello's building structure. See *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157.

 Though plaintiff was engaged in alteration or erection of a structure in Act terms, and the scaffold was undeniably a device included in the Act's coverage when used as a scaffold, plaintiff's injury had no connection with the hazardous nature of the scaffold, nor was he engaged in activity that the Act was intended to protect.

We note further that case law clearly states that the Act should not be expanded by strained or unnatural interpretations and that this is especially true if other remedies, such as workers' compensation and tort remedies, are available to the plaintiff. (*Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 538, 487 N.E.2d 1124, 1126; *Rambert v. Advance Construction Co.* (1985), 134 Ill. App. 3d 155, 158, 479 N.E.2d 1007, 1009, *appeal denied* (1985), 108 Ill. 2d 586; *Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878, 882, 473 N.E.2d 385, 387, *appeal denied* (1985), 102 Ill. 2d 553.) Therefore, we decline to expand coverage of the Act in this case.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.